## TEXAS CO. v. ATLANTIC REFINING CO.

### (District Court, E. D. Pennsylvania. March, 1918.)

### No. 5528.

1. PLEADING ⟨⟩343—JUDGMENT ON PLEADINGS—SUFFICIENCY OF GROUNDS.
   A judgment should not be rendered on the pleadings unless the right thereto is clear.
2. PLEADING ⟨⟩348—MOTION FOR JUDGMENT ON PLEADINGS—FINDING OF DAMAGES.
   Motion by plaintiff for judgment for want of sufficient affidavit of defense denied, where, on the allegations of the pleadings, no finding of damages could be made as a basis for a judgment, and the right of recovery depended on questions which could better be ruled after the facts were developed on the trial.

At Law. Action by the Texas Company against the Atlantic Refining Company. On motion by plaintiff for judgment for want of sufficient affidavit of defense. Denied.

Foss, Walnut & Faught, of Philadelphia, Pa., for plaintiff.

Ira Jewell Williams and Brown & Williams, all of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. This rule might be disposed of by an order simply allowing or refusing judgment. A "decent respect," however, for the opposing views of the parties and their counsel, who have discussed the questions involved with marked ability and clearness and brought to the aid of the court the fruit of much labor expended upon the preparation and presentation of their respective views, as well as the large sum involved, impels us to set forth with fullness the reasons which lead us to the conclusion reached.

The following general observations will show the grounds of the ruling now made:

Cases calling for a judicial judgment roughly classify themselves into uncontested and contested cases. We are concerned now only with contested cases. In each of these, as in the instant case, the court is asked to enter a judgment. Every judgment must proceed upon some finding of fact. Sometimes the finding is made by a jury or other trier of fact and judgment is entered on the verdict. Sometimes the facts are found as asserted, or explicitly or tacitly admitted to be, by the party against whom judgment is rendered. If the defendant disputes, not the facts, but the right of the plaintiff to judgment on the plaintiff's statement of facts, the judgment rendered proceeds upon the finding that the facts are as averred by the plaintiff. If the plaintiff accepts the defendant's version of the facts, the judgment proceeds upon a finding of the facts as averred by the defendant, and the judgment is a like demurrer judgment. If no such finding can be made, all issues between the parties become trial issues.

The theory of the system of practice governing the entry of judgments assumes that the ultimate facts upon which the judgment is

pronounced are either thus admitted or found, or that such evidential facts are admitted as permit of only one and that a certain ultimate fact finding.

[1] In the class of uncontested cases the machinery provided works with precision. It is only in some of the contested class that difficulties are encountered. Difficulties arise because the defendant throws into the machinery the proverbial "monkey wrench," which interferes with its operation. Every case has its psychology and its business or other ethics, as well as its facts, and the legal principles by which its legal justice is determined. Sometimes a defendant is merely contumacious and obstructive. He has no defense to the action and knows he has none. Sometimes, however, there has been something in the transactions between the parties leading up to the litigation which causes the defendant honestly (whether mistakenly or not) to feel no sense of obligation to the plaintiff, and to deny any legal obligation to exist. Such cases, if the defendant can bear the expense of litigation, are always fought to the utmost and to the end, because the defendant is defending himself against what he believes to be legal injustice. Such cases should always be patiently heard and the defenses fully considered in order that courts may fulfill their established mission, which is, not merely to strive to do legal justice, or even to do it, but also to act with such circumspection and care that the appearance and danger of doing injustice may as far as is practicable be averted. It is the part of practical wisdom not to enter summary judgments in such cases unless the right of the plaintiff to judgment is clear. It is not enough that the question raised may be ruled as a question of pleadings. As it may also be ruled as a trial question, it should be so ruled if the case is not entirely clear; and, on a view of the whole case, such is the better course to follow. This gives us a subdivision of contested cases into those in which there is no real, in the sense of honest, dispute, and those in which the dispute is real and honest on the part of the defendant, but perhaps baseless. If it is clearly baseless, however honest it may be, there is no justification for refusing to plaintiff the judgment to which he is entitled.

The class which we have in mind is that of cases in which there are real disputes, the merits of which are not entirely clear, but which, when they are decided, are decided in favor of the plaintiffs. In the class of cases in which there is no real defense, if the defendant swears to a state of facts on which, if found, judgment could not be entered for plaintiff, the case must go to trial in order that the true state of facts may be found by a jury. If, however, the defendant merely denies that plaintiff is entitled to judgment, and makes an uncandid and evasive statement of facts in which no real defense can be found, and the purpose to merely delay judgment is sufficiently manifest, the court should enter judgment. The real ground of the ruling is the finding that there is no defense, and that the affidavit is evasive and a feature of mere dilatory tactics. As, however, in their rulings in entering or refusing judgments the accompanying opinions have not been confined to the bald statement of this ground for the ruling, but have sought support for the finding in the phraseology of the

affidavit, the reported affidavit of defense cases may be cited in aid of almost any theory which may be advanced. This is because the cases are misquoted, in that the real ground of the ruling is sought to be found in the words of the affidavit, instead of where it is to be found in the finding of a defense or no defense, to which finding the words of the affidavit are merely contributory. Erie v. Butler, 120 Pa. 374, 14 Atl. 153, is a cited instance.

Let us, discarding from the statement of claim and the affidavit of defense the purely jurisdictional averments, which are not called in question, analyze the respective averments of fact made by the parties, and thus determine to which of the classes, above referred to, the present case belongs.

The plaintiff's cause of action thus disclosed is that the parties entered into a written agreement bearing the date of March 14, 1916, supplemented by a paper writing dated March 15, 1916, by which the plaintiff contracted to sell and deliver in successive part shipments, and the defendant to accept and pay for, 150,000 barrels of oil at an agreed price. By the bargain thus made the defendant was bound to accept the oil, and the further averment is made that the defendant refused (in part) to accept, and that out of this contract and breach a cause of action has arisen.

The affidavit of defense as a presentation of the theory of the defense to the cause of action thus pleaded is criticized because of the absence of clearness and definiteness in statement. There can be gathered from it, however, two thoughts. One is an unwillingness (at least) to admit that the contract is as set forth in the two writings Exhibits A and B.

The position taken in defense can be best stated circumstantially. The writing "A" is admitted to have been made and signed by both parties, but the inference that it thereby became the contract of defendant is denied, and the denial is supported by the averment of fact that it was not delivered, but had been signed and forwarded to be delivered upon condition that plaintiff should stipulate in writing that the defendant was not to be bound to accept further and future deliveries unless the earlier deliveries were found to be satisfactory in quality. Writing A was thus signed and committed to C. E. Bedford, to be delivered upon compliance with the above condition, or otherwise to be returned to defendant. Bedford, it is averred, was in this acting for plaintiff, but it is not averred that he had any authority from plaintiff to so act. The writing "B" is unilateral--signed only by plaintiff. Its receipt by the defendant is not denied, and a fair inference is that its receipt is admitted. A further fair inference is that it was at least intended by plaintiff to be a compliance with the condition imposed by defendant, of which plaintiff had been informed.

The defendant, at this point, might have challenged the judgment of the court upon the question of what was the contract—the one set forth in the paper writings, or the one set forth by defendant in this conditional delivery. This finding, however, we are not asked to make, but the affidavit of defense proceeds to the second thought, which is to challenge the correctness of plaintiff's construction of the contract

as disclosed by these paper writings. This construction is asserted to be that defendant was bound to accept all the oil, unless within the stipulated 15 days after receipt of the first shipment the plaintiff exercised its right to "cancel."

The proper construction of the contract as written, advanced by defendant, is that it had a reasonable time after receipt of part shipment within which to notify plaintiff of dissatisfaction and to discontinue further shipments, or, at least, if it became dissatisfied within the 15 days, that it had a reasonable time thereafter in which to notify the plaintiff.

This construction of the contract is given efficacy by the averment of the fact that within the 15 days defendant was dissatisfied, and within a reasonable time, to wit, 29 days, notified the plaintiff and exercised its right to "cancel."

The court would ordinarily be called upon to make the rulings thus invited by a finding of what the contract was and giving to it a judicial construction, and, if (and, of course, this possible finding is stated merely to present the point) the court found and construed the contract as defendant construes it, the court would be further called upon to determine whether the question of reasonable time is for the court or for the jury to determine, and, if for the court, whether the notice averred was reasonable.

If the case goes to a jury, it is unnecessary and practically unwise to decide now questions which may arise and can be determined as trial questions. Because of this, we, for the present, pass them until the preliminary question is itself decided. This is all which need be said upon the "cause of action" feature of the pleadings, and we pass to the only other feature requiring comment.

In breach of contract cases, the statement of claim must disclose, not only a cause of action, but also an averment of the fact of damage, and the sum for which judgment is asked. This latter requirement the plaintiff has met through making clear averments in accordance with the ordinarily accepted forms of good pleading. Indeed, from the viewpoint of plaintiff's theory of its case (and it has the clear right to adopt and sue upon its own theory), the statement of claim is in substance and form above criticism, and has not been criticized because it could not be. We have, however, qualified the statement made because of the opposing theory presented by the affidavit of defense. The measure of damages which the plaintiff asks to have applied is when applicable the accepted measure. It is the difference between contract price and market price at the time and place of delivery. This is the accepted measure, because, when available, it is the most certain and definite and in consequence satisfactory measure. It thus becomes practically the sole and exclusive measure (when we have it), and as a further consequence has come to be regarded as the measure of damages in all such cases. Although ordinarily practically accurate, this is an unscientific and incorrect conclusion. This is so because there not only may be, but there are, cases in which we cannot apply this measure, for the reason that the subject-matter of the contract is not dealt in as a market product and has no market

price. If this were the only measure, then all such cases would be injuria absque damno.

This leads to an inquiry into the indemnity rights of a vendor upon whose hands by a breach of contract has been thrown something for which he had the right to receive the contract price. In a certain sense, it may be said the vendor has the right to his contract price, but this is upon the assumption that he gives up the thing contracted to be sold. As in a common-law action his suit is for damages, he can recover only for the loss he has sustained. He is to be put back where he would have been had there been no breach. As he has the goods, he is entitled only to the contract price less whatever money value he can get out of the goods. Here comes into play the principle that the vendor is bound to minimize his damages by getting out of the goods all he reasonably can or can be expected to do. He may reasonably be expected to be able to get the market price, and cannot reasonably be expected to get more. Hence the acceptance of market price as an element in the measure of damages. It is clear, however, that it is not "the" measure, but a measure which when you can apply it becomes the measure. When it cannot be had, resort must be made to some other measure.

[2] Recurring to the statement of claim, it avers a market price of $2.15 as against a contract price of $3, and a consequent damage of 85 cents per barrel, and a total damage of $96,180.25.

The affidavit of defense denies that the plaintiff has suffered this sum of damage, and denies all damage. It denies the application of plaintiff's measure of damages by denying the market price to be $2.15, and further that the oil had any market price at the time and place of delivery. If the affidavit of defense stopped there, the logic of the plaintiff might be applied. We have credited defendant with a market price of $2.15. If it disclaims this credit, then our damages are more than 30 times the sum claimed, and judgment may be entered for the less sum. The fallacy in this lies in reading the affidavit as admitting that the oil had no value and that plaintiff could get out of it no part of the contract price. We would not be justified in so reading it. The point, so far as concerns the court, may be thus presented. We cannot enter judgment (as before stated) without a finding of some fact which will support it. To measure the damages, we must find a measure. We cannot find the market price to be $2.15, or any other sum, if the fact be that there was no market price at the place of delivery. The plaintiff's statement of claim provides us with no other measure.

Waiving the question of whether the defendant is bound to admit the existence of another measure not invoked by the plaintiff, we must have some measure, and, as the statement of claim provides us with none, there is no place of resort other than to the affidavit of defense. In this a substituted measure might be found by the expedient of resorting to the market nearest to the place of delivery, and adding to the price there the expense of transportation, or what has the same result, deducting from the contract price this market price as affected by the cost of transportation. This results, however, in finding the selling value of the oil to equal or exceed the market price. If this

be called the market price at the place of delivery, the affidavit is open to the criticism of making two inconsistent and contradictory statements, and invites the application of the principle which the plaintiff invokes that each statement is destructive of the other, and the averments of the statement of claim remain undenied.

This criticism is well founded only in a sense. The two averments are to be read together, and read also with the statement of claim. When so read, they may (and we think fairly) be taken to mean this: The plaintiff says the market price of this oil was $2.15. This we deny, if it refers literally to the place of delivery. Oil is not there bought or sold, and there is no such market. If the statement refers to the price in the market nearest to the place of delivery, then the cost of transportation should be added, and the market price then exceeds the contract price, or the price which plaintiff can get in such market plus what it saves in transportation nets it the contract price.

We do not find in the pleadings any warrant to find any sum as damages. The conclusions reached are as follows:

1. We cannot make a finding of any definite sum for which to enter judgment.

2. The right of the plaintiff to judgment depends upon questions which may as well be ruled as trial questions after the facts of the case are fully developed as to be ruled upon the facts to be found in the pleadings. The decision is preferably to be deferred as the damages must in any event be found.

At the cost of lengthening an already overlong opinion, these further observations are the due of counsel who (as already mentioned) have expended much time and labor upon the presentation of the case, and thereby very much lightened the labors of the court, and they may be of general aid in disclosing the attitude of the court in entering summary judgments. Cases to which there is no defense disclosed, and in which a finding of a merely delaying purpose may be made, are in a class by themselves. Cases in which the ultimate facts are not in dispute, and a satisfactory statement of which may be made so that there is in substance a case stated, constitute another class. Cases in which the facts are disclosed with sufficient definiteness so as to give the court a firm grasp of the whole fact situation and enable it to make a definite fact finding form still another class. In all such cases summary judgments may well be entered. If, however, judgments are entered in doubtful or close cases, there is small promise of any saving of time in case an appeal is taken, and, if the appeal is successful, the appellate court has a possible double burden cast upon it, and litigants must endure no small part of the curse which the system of appeals from interlocutory judgments, which prevails in some jurisdictions, visits upon litigants there, entailing the evils of delays and expenses which operate as a practical denial of justice.

The rule for judgment is discharged.